Kevin P. McCulloch (KM0530)
Nathaniel A. Kleinman (NK3168)
The McCulloch Law Firm, PLLC
501 Fifth Avenue, Suite 1809
New York, New York 10017
T: (212) 355-6050
F: (206) 219-6358
kevin@mccullochiplaw.com
nate@mccullochiplaw.com
*Attorneys for Plaintiffs*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZUMA PRESS, INC., ACTION SPORTS PHOTOGRAPHY, INC., TIYU (BEIJING) CULTURE MEDIA CO. LTD., MANNY FLORES, ANDREW DIEB, CHRISTOPHER SZAGOLA, LOUIS LOPEZ, CHARLES BAUS, DUNCAN WILLIAMS, ROBERT BACKMAN, JOHN MIDDLEBROOK, and ANTHONY BARHAM,<br><br>    *Plaintiffs*,<br><br>JOHN PYLE,<br><br>    *Intervenor-Plaintiff.*<br><br>    v.<br><br>GETTY IMAGES (US), INC.,<br><br>    *Defendant*. | Case No. 17-cv-05832 (AKH)<br><br>Hon. Alvin K. Hellerstein<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF JOHN PYLE'S MOTION TO INTERVENE** |

## INTRODUCTION

Proposed Intervenor John Pyle ("Pyle"), by and through undersigned counsel, hereby submits this Memorandum of Law in support of his motion to intervene in this action pursuant to Fed. R. Civ. P. 24(a) and (b).   The Second Amended Complaint (Dkt. No. 36) ("SAC") filed by Plaintiff Zuma Press, Inc. ("Zuma") on July 28, 2017 purports to include claims for copyright infringement related to at least 710 photographs (*see* SAC Exhibit A; Pyle Decl. ¶ 2) that Pyle created and to which he owns the exclusive copyrights (hereinafter "the Pyle Photographs"). Although Zuma claims to have 'exclusive' rights in all of the photographs at issue (*see* SAC ¶¶ 34-35), none of these photographs were exclusively licensed to Zuma.  (Pyle Decl. ¶ 3.)

Pyle was a founding partner and photographic contributor to a boutique sports photo licensing company called Cal Sports Media, Inc. ("Cal Sports").  (Pyle Decl. ¶ 2.) Pyle contributed photographs to Cal Sports on a non-exclusive basis, and never granted Cal Sports an exclusive license or rights related to any of his photographs.  (*Id*. ¶ 3.)  Cal Sports, in turn, submitted Pyle's photographs, including the set of Pyle Photographs at issue in this action, to numerous stock photo licensing companies, apparently including Zuma.  (*Id*. ¶ 4.)  Although Pyle is not aware of the terms of the contributor agreement between Cal Sports and Zuma, it cannot have legitimately granted Zuma any exclusive rights in Pyle's photographs both because Cal Sports did not have any such exclusive rights to convey to Zuma and because, upon information and belief, Cal Sports licensed its content, including Pyle's photographs, to numerous stock photo licensing companies. (*Id.* ¶ 5.)

In addition, and regardless of whether Zuma was granted—illegitimately or otherwise— any exclusive rights in the Pyle Photographs, Pyle owns copyrights in the Pyle Photographs for which Zuma has asserted copyright infringement claims against Defendant Getty Images (US) Inc.

Pyle thus has his own claims against Getty Images related to the allegedly unauthorized copying and distribution of the Pyle Photographs that forms the core factual basis for this action.  Pyle's involvement in this action thus is appropriate and more efficient than pursuing a separate cause of action against Getty Images that would be entirely redundant of the proceedings already before the Court.  Pyle's involvement in this action also is necessary to insure that his rights and claims are not inappropriately compromised by Zuma, and to ensure the full development of the underlying factual issues in the suit, particularly Zuma's claim to own any exclusive rights in the Pyle Photographs.  Permitting Pyle to intervene is appropriate and necessary to achieving the just and equitable adjudication of the factual and legal questions already before this Court.

## ARGUMENT

### I.    APPLICABLE STANDARD OF REVIEW.

Pursuant to Federal Rule of Civil Procedure 24, a court must permit an intervention as of right where an applicant makes "a four-part showing: (1) the application is timely; (2) the applicant has a significant protectable interest relating to the property or transaction that is the subject of the action; (3) the disposition of the action may practically impair the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest."  *Floyd v. City of N.Y.*, 302 F.R.D. 69, 83 (S.D.N.Y.), *aff'd in part, appeal dismissed in part,* 770 F.3d 1051 (2d Cir. 2014); *see also Kamdem-Ouaffo v. Pepsico, Inc.*, 314 F.R.D. 130, 134 n.3 (S.D.N.Y. 2016).  While an "intervention application will be denied unless all four requirements are met," *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994), the Court should note that these four parts "are not bright lines, but ranges—not all 'interests' are of equal rank, not all impairments are of the same degree, representation by existing parties may be more or less adequate, and there is no litmus paper test for timeliness." *United States v. Hooker Chemicals & Plastics Corp.*, 749 F.2d 968, 983 (2d Cir. 1984).  These factors thus need not be considered independently, and "a

showing that a very strong interest exists may warrant intervention upon a lesser showing of impairment or inadequacy of representation," and "where representation is clearly inadequate, a lesser interest may suffice as a basis for granting intervention." *Id*.

## II.   ALL REQUIREMENTS FOR INTERVENTION AS OF RIGHT ARE SATISFIED HERE.

### A.  Pyle's Motion To Intervene Is Timely.

Among the factors to be considered in determining whether an applicant has timely moved to intervene are: "(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness." *Pitney Bowes*, 25 F.3d 66 at 70.   "Rule 24(a) requires courts to measure timeliness from the moment when the applicant had actual or constructive notice of its unrepresented interest, not from the moment a judgment was issued or from the moment when the existing parties decided not to appeal that judgment."   *Floyd*, 302 F.R.D. at 86.   In determining timeliness, the most important factor "is whether the delay in moving for intervention has prejudiced any of the existing parties." *Id.* at 98.

Pyle's request to intervene is timely and permitting intervention will not cause prejudice to any current parties.  Pyle's motion comes only four weeks after Zuma filed its Second Amended Complaint.  (Dkt. No. 36.)  Courts routinely have held that intervention applications filed so soon after an operative complaint are not untimely and should be granted.  *See Commack Self-Serv. Kosher Meats, Inc. v. Rubin,* 170 F.R.D. 93, 100 (E.D.N.Y.) (finding motion to intervene filed 46 days after plaintiff's amended complaint was timely);  *E.E.O.C. v. Local 638*, No. 71 CIV.2877 (RLC), 2003, WL 21767772, at*1 (S.D.N.Y. July 30, 2003) (holding application "filed less than one month after receiving actual notice of the Proposed Consent Order" timely.); *Herdman v. Town*

*of Angelica,* 163 F.R.D. 180, 185 (W.D.N.Y. 1995) (finding "no reason to find that CCAC's [ten weeks old] motion is untimely"); *Cook v. Pan Am. World Airways, Inc.,* 636 F. Supp. 693, 695 (S.D.N.Y. 1986) (holding movants' five month delay is not prejudicial to the other parties and "does not warrant denial of the motion"); *Meyer v. MacMillan Pub. Co.,* 85 F.R.D. 149, 150 (S.D.N.Y. 1980) (holding a motion filed a year and a half after the complaint is not untimely where "Macmillan has not shown any prejudice to its position resulting from the delay by EEOC," and "delay is insufficient alone to mandate denial of the motion to intervene").

Regarding notice, Pyle only became aware of the litigation when Zuma's counsel asked Pyle on or about November 27, 2016 to sign a retainer to participate in a potential class action against Getty Images.  (Pyle Decl. ¶ 6.)  At that time, however, Zuma's counsel claimed it had no information regarding whether any Pyle photos were involved and thus Pyle did not have any notice of any actual basis for claims against Getty Images.  (*Id.*)  Moreover, after retaining his own counsel to inquire into the matter, Pyle discovered that Getty Images' Motion to Dismiss was pending and thus, given the potential for dismissal, there was no reason to intervene at the time.  This Court resolved Getty Images' motion only a few weeks ago, on June 29, 2017.  (Dkt. No. 33.)  Only after the Court permitted certain Zuma claims to proceed and Zuma repleaded to again assert claims related to Pyle Photographs did Pyle have notice of an unrepresented interest that would be affected by the progress of this action.

Even if one could construe Pyle's decision to await the outcome of the pending motion to dismiss as delaying, permitting Pyle to intervene at this stage of the action will not prejudice the existing parties in any way.  Pyle is seeking to intervene at the very earliest stage of this action, merely two weeks after Getty Images filed its Answer to the SAC (Dkt. No. 37) and before any fact discovery has occurred.  Again, courts routinely find that permitting intervention at such early

stages of an action will not result in prejudice. *See Rivera v. New York City Hous. Auth.*, No. 94 CIV.4366 (PKL), 1995 WL 375912, at *3 (S.D.N.Y. June 23, 1995) ("When a case is in its early stages, a motion to intervene is timely."); *S.E.C. v. Credit Bancorp, Ltd.*, No 99 CIV.11395 (RWS), 2000 WL 1170136, at *2 (S.D.N.Y. Aug. 16, 2000) ("Discovery, while ongoing for several months, has not progressed so far that it will be unduly delayed or complicated by Dillon's intervention."); *Gale v. Stallone*, No. 91 CIV.3467 (JFK), 1993 WL 410162, at *1 (S.D.N.Y Oct. 14, 1993) (granting motion to intervene in part because "timeliness is hardly an issue because little discovery has actually happened that would prejudice the parties"). By contrast, courts have found delay resulting in prejudice only where an applicant seeks to intervene much later in the proceedings and after much more substantive discovery has occurred. *See, e.g.*, *Hnot v. Willis Group Holdings Ltd.*, No. 01 CIV 6558 (GEL), 2006 WL 3476746, at *5 (S.D.N.Y. Nov. 30, 2006), *aff'd* 234 F. App'x 13 (2d Cir. 2007) (finding prejudice to the parties where "[t]he original complaint was filed over five years ago, fact discovery has been complete for over two and half years, and the class has been certified for over a year and a half"). Given that this action is in its infancy and no discovery has occurred and no merits determinations have been made, permitting Pyle to intervene will not alter the ability of any party to proceed as expected, and Pyle would comply with the briefing schedule already set. (Dkt. No. 38.)

Lastly, Pyle will be prejudiced if unable to intervene because his copyrighted Photographs are at issue in this action. Because Zuma is not the owner of the copyrights in the Pyle Photographs and Pyle disputes that it owns any *legitimate* exclusive license or rights in those works, allowing Zuma to assert claims against Getty Images unilaterally holds the potential to seriously prejudice Pyle's own interest. Indeed, this Court has held—albeit mistakenly—that an exclusive licensee may settle accrued claims for infringement on behalf of a copyright owner by granting retroactive

5

licenses to the infringer, including over the copyright owner's explicit and vehement objections. *See Spinelli v. Nat'l Football League*, 96 F. Supp. 3d 81 (S.D.N.Y. 2015), *appeal pending* No. 17-0673 (Aug. 23, 2017). In light of this Court's ruling in *Spinelli*, Zuma potentially could wipe away Pyle's claims against Getty Images through a retroactive licensing settlement with Getty Images and, shockingly, could do so despite Pyle's objections and without owing Pyle any royalties or any duty of good faith. *Id.* Unless he is permitted to intervene in this action to pursue his own claims against Getty Images (and, unless Zuma stipulates to not granting a retroactive license to Getty Images, a preliminary injunction against Zuma), Pyle could do nothing to prevent his copyright claims against Getty Images from being wiped away without his consent and without any compensation. Further, Pyle has a direct and unrepresented interest in the ultimate determination of the validity of Zuma's assertion that it has exclusive rights in the Pyle Photographs, which Pyle contends is precluded by the fact that he granted only a non-exclusive license to Cal Sports and contradicted by the fact that Cal Sports supplied these same photographs to other stock photo licensors. (Pyle Decl. ¶¶ 3-5.)

The timeliness factors weigh in Pyle's favor, and the first intervention criterion is met.

**B. Pyle Has A Significant Protectable Interest In Property And The Transaction At Issue.**

"Rule 24(a)(2) provides for intervention as of right where the applicant 'claims an interest relating to the property or transaction that is the subject of the action.'" *Floyd*, 302 F.R.D. 69 at 99. The applicant's interest must be "'a legal interest as distinguished from interests of a general and indefinite character.'" *Id.* (quoting *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995)). The interest must be "direct, substantial and legally protectable" to be cognizable by Rule 24(a)(2). *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d. Cir. 2010). The interest is sufficient if it is "based on a right which belongs

to the proposed intervenor rather than to an existing party to the suit." *Vazman, S.A. v. Fid. Int'l Bank,* 418 F. Supp. 1084, 1086 (S.D.N.Y. 1976).

Here, Pyle has a significant interest in both property in issue (his copyrighted works) and the transaction in question (the infringement by Getty Images). Pyle thus has a direct, substantial, and legally cognizable interest both in protecting his copyrighted works from unauthorized use by Getty Images and in precluding Zuma from compromising that interest. As the creator and owner of the Pyle Photographs, the Copyright Act grants Pyle the exclusive right to pursue claims for infringement of those rights. *See* 17 U.S.C. §501. The law thus recognizes and protects his interest to prevent the unauthorized use of his work, *and* to seek retribution from such infringements.

Further, because Pyle disputes Zuma's claim that it has exclusive rights in the Pyle Photographs by way of its license from Cal Sports, Pyle also has an interest in resolving whether Zuma has any authority to pursue these claims and/or grant retroactive licenses to Getty Images that potentially could compromise Pyle's copyright claims. Pyle thus has an interest that is potentially adverse to both parties in the action and thus his interests cannot possibly be adequately represented by either party. Unlike contingent claims that have been held to involve only remote interests that do not support intervention, Pyle's interest is direct and not contingent on the outcome of this action. *See Hilfiger v. Tee's Ave. Inc.,* No. 95 CIV 9358 (DAB), 1996 WL 403075, at*2 (S.D.N.Y. July 17, 1996) ("In the present case, Burton's action is contingent on the outcome of the Plaintiffs' action because Plaintiffs must prevail in their action for trademark infringement against the Defendants in order for Burton to prevail in its action against Defendants."); *see also Frederick Music Co. v. Sickler*, 124 F.R.D. 553, 554-5 (S.D.N.Y. 1989) (ruling the petitioner, who was a co-author of the song involved in the suit, did not have a right to intervene because "[t]he outcome of this action will not affect the rights of the petitioner because this action solely concerns

the Forrest copyright renewal rights").  Pyle should be permitted to intervene because he plainly

has a significant, protectable interest in both property and the transaction at issue.

### C. Pyle's Ability to Protect His Interest May Be Impaired or Impeded by the Disposition of This Action.

Following *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n. Inc.,* 471 F.3d 377 (2d Cir. 2006),

courts in this Circuit are required "to determine whether an applicant is 'situated that without

intervention, disposition of the action may, as a practical matter, impair or impede the applicant's

ability to protect its interest.'" *In re Pandora Media, Inc.,* No. 12 CIV. 8035 DLC, 2013 WL

6569872, at*9 (S.D.N.Y. Dec. 13, 2013) (quoting *MasterCard Int'l*, 471 F.3d at 390).

Disposition of this action without Pyle's involvement may impair his interest in vindicating

the infringement of his rights by Getty Images.  If the Zuma and Getty Images agree to settle,

particularly if a retroactive license is granted, this Court's decision in *Spinelli* means that such an

agreement could dispose of Pyle's claims and prevent him from pursuing his own action against

Getty Images.  This is a clear and present risk to Pyle's interests that can only be rectified by

permitting him to intervene.  *See AB ex rel. CD v. Rhinebeck Cent. Sch. Dict.,* 224 F.R.D. 144, 157

(S.D.N.Y. 2004) (finding the impairment element is satisfied because "the private Plaintiffs could

agree to settle this action for money damages without seeking the type of institutional changes by

the District that the Government considers necessary to ensure that students are protected from

unlawful discrimination and harassment in the future"). The disposition of Zuma's claims against

Getty Images also could affect any future action by Pyle against Getty Images, creating persuasive

authority on crucial legal questions.  *See In re Oceana Intern., Inc.,* 49 F.R.D. 329, 332 (S.D.N.Y.

1969) ("A victory for Oceana in its action against the Bank would be persuasive authority in any

subsequent proceeding brought by Oceana against Cap-Roc, despite the gratuitous stipulation on

the record below").

Disposition of this action without Pyle's involvement also may impair Pyle's exclusive rights in the Pyle Photographs, creating a legal basis for Getty Images to subsequently challenge Pyle's standing to even pursue his claims.  Moreover, if Zuma were to recover from copyright violations by Getty Images despite its lack of a legitimate exclusive license, such a decision would award a non-exclusive licensee the same rights and protections as a copyrights owner.  Such a result would preclude the actual copyright owner, Pyle, from enjoying the exclusive rights and protections afforded him by the Copyright Act.

### D.  Pyle's Interests Are Not Adequately Represented by the Current Parties.

"Determination of the adequacy of existing representation necessarily involves an assessment of factors which are within the discretion of the district court."  *U.S. Postal Serv. v. Brennan,* 579 F.2d 188, 191 (2d Cir. 1978).  The adequacy requirement is satisfied "'if the applicant shows that representation of his or her interest may be inadequate; and the burden of making that showing should be treated as minimal.'"  *Dow Jones & Co. v. U.S. Dep't of Justice,* 161 F.R.D. 247, 254 (S.D.N.Y. 1995) (quoting *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972)) (internal citations omitted).

As noted above, neither Getty Images nor Zuma are capable of representing Pyle's interests in this action because his interests are adverse to both parties.  It is not that Pyle merely has a different view of the facts, applicable law or litigation strategy.  Instead, although Pyle and Zuma share an interest with respect to vindicating claims against Getty Images, they have a fundamentally different interest that is potentially adverse with respect to the question of standing to pursue and settle claims related to the Pyle Photographs.  *See United States v. Int'l Bus. Machines Corp.,* 62 F.R.D. 530, 536 (S.D.N.Y. 1974) ("If the interest of the absentee is not represented at all, or if all existing parties are adverse to him, then he is not adequately

represented."); *In re Oceana Intern., Inc.*, 49 F.R.D. 329, 333 (S.D.N.Y. 1969) (granting petitioner's motion and considering statements by Bank acknowledging "there may be a conflict of interest between itself and Cap-Roc, and urges that Cap-Roc be allowed to come in to present its position and protect its interests."); *CBS Inc. v. Snyder*, 136 F.R.D. 364, 368 (S.D.N.Y. 1991) (finding the intervenor not adequately represented where "AFTRA's interest diverge from those of CBS and James Snyder").

Even setting aside the question of whether Zuma's claim to an exclusive license is legitimate, Zuma does not adequately represent Pyle's interests in this action because it is concerned with protection of its own rights (assuming *arguendo* it has cognizable rights that are protected under the Copyright Act), and it is not seeking compensation on behalf of or for Pyle related to the violation of Pyle's copyrights.  Zuma has made no assurances to Pyle that he would receive any compensation from any damages or settlement of its claims, and even though its alleged right to pursue claims involving contributor photographs is derivative of rights granted under a license requiring royalty payments, that contract does not contemplate or provide for Zuma compensating contributors for settlement recovery.  Thus, even if Pyle and Zuma are not adverse in this action, there is no question that Zuma is acting to represent Pyle's separate (and undoubtedly cognizable) interests.  Pyle, as the copyright owner of his Photographs, is concerned with the protection and remuneration for the infringements committed by Getty Images.  The Copyright Act provides standing to pursue such claims exclusively to the copyright owner, and Zuma is not acting as Pyle's agent or otherwise on behalf of Pyle in this action.  Pyle's case is not like those where "the putative intervenor and a named party have the same ultimate objective" and thus "a more rigorous showing of inadequacy" is not required.  *Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 179 (2d Cir. 2001); *see also Ionian Shipping Co. v. British Law Ins. Co.,* 426 F.2d

186, 191 (2d Cir. 1970) (affirming denial of intervention of right where assignee and mortgagor had identical interests such that intervenor could only recover half of what the party could if the party was successful).   Instead, as mentioned previously, Pyle is specifically stating his interests (rights in the Photographs) are potentially adverse to Zuma's claimed rights.

This potential adversity of interest is one of the ways to overcome the presumption of adequacy.   *Butler*, 250 F.3d 171 at 180 ("Although perhaps not an exhaustive list, we generally agree with the holdings of other courts that evidence of collusion, adversity of interest, nonfeasance, or incompetence may suffice to overcome the presumption of adequacy."); *Chevron Corp. v. Donziger*, No. 11 CIV.0691 LAK, 2011 WL 2150450, at*4 (S.D.N.Y. May 31, 2011) (In cases where "the putative intervenor and a named party have the same ultimate objective", "[t]he putative intervenor can overcome the presumption of adequate representation . . . by providing evidence of, for example, 'collusion, adversity of interest, nonfeasance, or incompetence").   Thus, even if Pyle was held to the heavier burden, and not the minimal burden as warranted, the adequacy of representation element would weigh in favor of granting the intervention.

In sum, all four criteria for granting a motion to intervene under Rule 24(a)(2) have been met.  Thus, Pyle's Motion to Intervene should be granted.

## III.   IN THE ALTERNATIVE PYLE MEETS THE CRITERION FOR RULE 24(b) PERMISSIVE INTERVENTION.

Permissive intervention may be granted "when an applicant's claim or defense and the main action have a question of law or fact in common."  *AT&T Corp. v. Sprint Corp.,* 407 F.3d 560, 561 (2d Cir. 2005) (citing Fed. R. Civ. P. 24(b)).  "The principal guide in deciding whether to grant permissive intervention is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'"  *United States v. Pitney Bowes, Inc.,* 25 F.3d 66, 73 (2d Cir. 1994) (citing Fed. R. Civ. P. 24(b)(2)).  In making this determination, the Court also

considers "whether the applicant will benefit by intervention." *U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978).   Other relevant factors include "'the nature and extent of the intervenors' interests,' the degree to which those interests are 'adequately represented by other parties,' and 'whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.'" *H.L. Hayden Co. of New York v. Siemens Med. Sys. Inc.,* 797 F.2d 85, 89 (2d Cir. 1986) (quoting *Sprangler v. Pasadena City Board of Education,* 552 F.2d 1326, 1329 (9th Cir. 1977)).

Pyle's copyrighted photographs are included in exhibits to Zuma's SAC as evidence of copyright violations by Getty Images.   (Pyle Decl. ¶ 2.)  Zuma's inclusion of the Pyle Photographs in its pleading demonstrates that Pyle's copyrights in photographs Zuma licensed have been violated, thus showing an unquestionable common question of fact and law.  Further, if the Court grants Pyle's motion for permissive intervention, the parties will not be unduly delayed or prejudiced.  As mentioned above, Getty Images' Answer to the SAC was filed only a couple weeks ago.  No discovery has been exchanged, no depositions taken, and no motions on the merits filed. Pyle is prepared to participate in this case on the schedule set forth by the Court.

 Next, Pyle will certainly benefit by intervening because it will allow him to protect his rights in his copyrighted photographs.  Additionally, Pyle will have the ability to hold Getty Images accountable for its infringement, and intervention will permit him an opportunity to challenge Zuma's alleged exclusive rights in the Pyle Photographs.

Another factor weighing in favor of permissive intervention is that Pyle's involvement in the proceedings would significantly contribute to the full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented. *See*

*Jamie Music Publ'g Co. v. Roc-A-Fella Records, LLC,* No. 05 CIV.9922 BSJ JCF, 2007 WL 1129333, at *3 (S.D.N.Y. Apr. 12, 2007) (granting motion to intervene in copyright infringement case where "intervention will actually assist in providing a more complete record."); *U.S. Football League v. Nat'l Football League*, No. 84 CIV.7484 (PKL), 1986 WL 5102, at *2 (S.D.N.Y. Apr. 30, 1986) ("[T]he trial court may also consider other relevant factors, including . . . whether granting permission to intervene will contribute significantly to a full development of the underlying factual issues at trial and, ultimately, to a just and equitable adjudication of the legal questions presented").   As the creator and owner of the Pyle Photographs already at issue in this action, Pyle would be able to provide specific information on the creation, usage and licensure of these specific photographs better than any other party.  Lastly, as discussed previously, Pyle's significant interest in protecting his copyrights in the Pyle Photographs will not be adequately represented by the current parties to the action.  Thus, his intervention is necessary.

## CONCLUSION

For the foregoing reasons, Pyle's Motion to Intervene should be GRANTED and he should be permitted leave to file the [Proposed] Intervenor Complaint.


Dated:   September 1, 2017                    Respectfully submitted,

                                             /s/ Kevin McCulloch
                                             Kevin P. McCulloch
                                             The McCulloch Law Firm, PLLC
                                             501 Fifth Avenue, Suite 1809
                                             New York, New York 10017
                                             T: (212) 355-6050
                                             F: (206) 219-6358
                                             kevin@mccullochiplaw.com

13